Good morning, Your Honors. Charles Fleischman appearing for the appellant, Mrs. Wagenstein. She was on long-term disability benefits from her employer's ERISA-governed disability plan for eight years when Cigna, the insurer of the plan, decided to have her examined by a doctor of their choosing, and they sent her to Dr. Shaheen. He did an examination. He wrote a lengthy, very lengthy review of all of her medical records, and he came to the conclusion that she could not sit more than occasionally, which is 0 to 2.5 hours in an eight-hour day. The law of this circuit is that anybody that can't sit for at least four hours a day in an eight-hour day can't do a sedentary job, and that's... So I want to get the chronology here straight, and I'm going to ask your friend about it too, because I think it's important to me, at least. You get the letter of termination in April of 2017? Yes. And your client appeals. Right. And asks for the file. Yes. The file eventually arrives, and it has Dr. Shaheen's opinion in it. Yes. He's examined her, and then it has a... What would be a VE report if we were in Social Security? It has a vocational experts report that says if she can sit for 2.5 hours a day, she can do the following sedentary jobs. You then basically, after an exchange with Cigna, say, look, that's wrong. You see Amani. Yeah. And we don't think we need to put any additional evidence in the record if that's what you're basing it on. Ninety days go by. We can put aside the procedural issues, and you filed the suit in federal court. Yes. Correct? After the suit, two months after the suit in federal court comes down, you get a denial of the appeal. Several months after. The denial was on October 23. And you filed on? On September, well, end of August. Yes, I'm pretty close. It's not quite two months. When you get the denial of the appeal for the first time, you learn that Dr. Belcourt has opined that your client can sit for eight hours a day. Right. I don't know it's Dr. Belcourt. I just know it's a medical director from Cigna. Okay, well, do you get the Belcourt report of that? After that. Yeah, right. They refer to it, though, in the letter of denial, don't they? They quote it. They quote it. They just don't name him. Yes. And then later on, you get a copy of that. That's the chronology? Yes. Okay. And then thereafter, when I realized I'd got an entirely new reason that it's not that she can sit two and a half hours and therefore she can do a job. Now it's... Oh, yeah, that's right. Let me ask you that. And then at that point, you're in district court. Right. And you say to the judge, because Dr. Belcourt purports to be interpreting the records of her treating physicians, I have letters from her treating physicians saying that he's got it wrong. Exactly. Okay. And the district judge won't consider those. Okay. Thank you. I want to make sure I have the chronology right, because it deals with several points in the case. So given that, I go back to a disposition that Judge Baio wrote in a case. Why didn't this, for our purposes, why wasn't the administrative record closed when you filed your district court lawsuit? It was. So that your position is that we ought to just review the record up to that point? Oh, no, no, no. You can, on de novo review, you can take in new evidence when the record is incomplete. Okay. Well, then, if we can, do we take in both? Does Dr. Belcourt's evidence, is that new evidence, too? See, one of my problems is you're saying my letters are new evidence and you ought to take them in, but shouldn't we also take in Dr. Belcourt's? My argument's in the alternative. I'm saying you shouldn't take in Dr. Belcourt because it's not in the record. It's a brand new reason that they came up. So it's your primary argument, it's just that we stop at the point when the suit was filed. They can go back and do new termination proceedings based on a further review of the record, but our job is just to review the record that existed at the time? Yes, that's my first position. But my second position, my backup position, is that if Belcourt was admissible, then certainly you have to let in her doctor's opinions on that subject. So let me turn to your backup position, then. Who looks at those documents? Do we send this back to the district court to look at those documents? I think you have to send it back to the plan. I'm not sure we can, can we? The district court's engaging in de novo review. Perhaps it should have admitted the documents, perhaps it shouldn't have. But do we have the power to remand to the plan to look at documents that weren't before when it made its decision? I think that court does it all the time. We often say to the plan, you didn't do this correctly, go back and do it right. But nobody tried to put these records into the plan proceedings. Frankly, I'm thinking of remedy in this case, if you're right. What do we do? Your first position is we should award her benefits. But what if we decide just to make the whole proceeding fair and have it reach its eventual conclusion? How do we do that? I think that, well, I don't always agree with it, but I think the law is pretty much that the plan should make the decision in the first instance. And in this case, I think it should be sent back to the plan for them to decide. They may never decide anything. I mean, she's going to get the retroactive benefits, the arrears under Pannebecker versus Liberty Life, I think it is. And they can take as long as they want to review the record and they can make a note, as you said. I guess let me ask the question differently. Could we send this case back to the district court and say the district court erred, different judge now, obviously, in not admitting these additional records? It could have, as you as you argue, and it should have looked at them. In reviewing DeNovo, it then should have decided whether the plan correctly terminated her benefits or not. And then we'll have a record and we can, when it comes back to us, we can decide what to do. You know, the problem with that is these cases never end. They just come over and it goes back and back and back. And sometimes somebody's got to say to these plans, you either do it right or you lose. I mean, they, if you look at what happened in this case, she was, well, I'm running out of time, but she was, you know, you've got a lot of time. Okay. She was, she was denied disability benefits on reason one. And when they realized that that reason stunk, they came up with a brand new reason, you know, a brand new witness, a brand new witness, a brand new reason. And by that you mean Belcourt. Belcourt. And Belcourt's report was written before I filed the complaint. And they never sent me Belcourt's. I mean, a long time before I filed the complaint, they never sent me Belcourt's report as they were required to do under Saloma. They, they, they never sent me the Voc Rehab report. And why do you want to send it back to the plan? If the plan has Belcourt's report in it, I imagine you'd want to remand to send it back to the plan with a, with a instruction that the plan consider the four letters. And any other course that we would submit. Although if we deal with this procedurally, and that's why I was asking the question, we could say everything that happened after you filed your lawsuit is none of our concern. The record was closed when you filed your lawsuit. Maybe your client's not disabled. Maybe Dr. Belcourt is right. But that's not in front of us. The plan should take that up again. And why would Dr. Belcourt be right when their own doctor showed up? I mean, I have some difficult, I mean, if you, if I were a finder of fact, I would be skeptical of his report, but that's not our. But help me with this. Judge Reel's decision, a great deal of it talks about all the other evidence in the record before Shaheen, before Belcourt, saying, oh, this woman's not so badly off. She does all these different things. If the record should have been closed after Shaheen and before Belcourt and anything else, where does that leave us? I mean, certainly most of the district judge's opinions seem to say there's substantial evidence that she's not disabled. Doctors disagree. Shaheen said what he said, but there's lots of evidence on the other side. If that's the case, who should have made, at this point I'll grant you that it was wrong for them to rely on Belcourt. So should they go back and retroactively say, okay, forget all that, who's right? Should the district court, which I thought Judge Reel mostly said, I've looked at it, and most of why you're wrong isn't Belcourt. It's the whole rest of the record. Is that a fair reading of what he's saying? No, he said there's 4,000 pages in that administrative record. The fact that most of it dated from before Shaheen, and it's the result of eight years where they would examine her, where they would- But he looked at all that. Well, he said he looked at all that, but there's 4,000- He wrote things in his opinion as though he'd looked at it. How about that? Okay, he looked at it, but what he failed to understand is that 4,000 pages, they're looking in with their doctor saying, oh, no, there's nothing wrong, but then they change their mind and say, oh, yes, okay, she can continue on disability. Every time that they did, they did several before they finally cut her off. They did several before. So that eight-year period is a period of medical records which satisfied the plan. I guess the difficulty, my difficulty with what the district court said is that the culmination of that is an examination and an opinion by a doctor they hired who said, my conclusion reviewing all this stuff, the records and her, is that she can only sit for two and a half hours a day. One more point. The guy that said that, Shaheen, is a doctor, and Judge Riel, he has no medical training that we know of. Neither do we that I know of. Well, there's a case, Hoffman v. SAG, where there's two Hoffman v. SAG cases. The first one says a judge is not a doctor, and his medical opinion doesn't count for anything, basically. That's a Ninth Circuit decision. Well, although, Signa, and I want to hear from the other side, let's assume that they had a picture of her playing seven hours of basketball. Even if the doctor opines she can only sit for two and a half hours, a judge could look at that record and say they didn't, they correctly found her not disabled. So it's, the fact that we're not doctors doesn't mean that we can't look at objective evidence. Of course. But she, they filmed her for six minutes and six days. She never was playing anything. She's just walking around, going and getting in a car. You don't want us to reverse and remand to the district court to consider the four letters in evaluating Belcourt and come to a new De Novo decision? I have levels of desire. The first one is that you... You sound like President Carter. The first one is, the first one is that you just award her the judgment, okay? Because I think the evidence is overwhelming. The second is that you say, okay, the record is closed with the filing of the complaint, can't consider Belcourt, can't consider her doctors because that's not even an issue anymore. And basically it's whether she can sit or not because that's the reason that they originally denied her the benefits. And who should then look at that? Well, I think my first choice is that the plan looks at that because that way she gets the arrears, okay? Well, I guess... And it's time that she's been waiting around for her money. She's living on Social Security now and why should she continue living this way until they screw it up? That's why I've been trying to figure out what it is you want us to do. And it seems to me that one alternative is for us to say, look, on the record that existed at the time your lawsuit was filed, the plan, a judge exercising de novo review who found that your client wasn't disabled would have been wrong because there's a medical opinion from the plan's doctor who examined her that she could only sit for two and a half hours a day. So that termination of benefits was wrong and we're done with it. If they want to go back now and claim that she's not disabled, that's fine. That's one alternative. The other alternative, it seems to me, is to send it back to the district judge and say, do this right. You're going to look at the Belcourt opinion, look at these other letters too. You're reviewing de novo. You make the factual determination. Those, it seems to me, are two of our options. Put aside sending it back to the plan. I take it you're ordering of those options is, the second one is second. I put them in your order of desire. Yes. Yes. Can I say, if you send it back and tell them to look at the Belcourt report, you're actually rewarding Cigna for holding that report back from me and for not their delict, you're punishing Mrs. Wagenstein. But you can seek a remedy from the district court if we send it back on just that basis, that they hear the evidence from you. Well, it would work. It depends on the judge that I'm assigned to. All right. Well, you know you won't have the same one you had last time. Yeah, I know that. All right. Thank you very much, Mr. Fleishman. Mr. McGuire. Thank you, your honors. Good morning. May it please the court, I'm Dan McGuire. I represent the Apelli Life Insurance Company of North America. At the district court, after a de novo review of the entire record, the district court found that the plaintiff did not sustain her burden approving entitlement to additional disability benefits. That factual finding may be overturned only if there is clearly erroneous findings. But none of the challenges that plaintiff has raised here rise to that level. First, the district court considered all the proper evidence. Well, district court did not consider the letters that she submitted, correct? Correct. So tell me why under these circumstances, even if we were only reviewing, if we were not disclosing it to the other side, you get an opinion from a second physician directly at odds with the opinion of the examining physician and never disclose it to the other side. As a matter of fundamental fairness, don't they get to rebut that? Two responses to that. One is that the report of Belcourt is not completely adverse to the report of Shaheen. Well, he concludes, he concludes, A, that she's not credible. Shaheen concludes after examining her that she's credible, correct? Correct. He concludes that she can sit for eight hours a day. Shaheen concludes that she can only sit for 2.5 hours a day. Correct again. In this circuit, four hours is the magic, is the bright line. Correct. So it may not be entirely adverse to her, but you surely couldn't have turned her down based on the Shaheen report, could you? We did, because it's not based solely on the Shaheen report. It's based on the whole medical record and all the evidence, the surveillance, the IME report, the medical records. So tell me where in this record there's support for the notion that she can sit, there's support for the notion that the examining doctor's report is wrong, Shaheen's report is wrong, and that she can in fact sit for four hours a day. They come to different opinions on that issue. No, but put aside Belcourt. At the time that you terminated her, and she asked for the reasons why, you sent her the Shaheen report and the VE report, right? The vocational experts report. Shaheen says you can sit for 2.5 hours a day, and the vocational expert who's not bound by our decisions, because after all she may have opinions for the entire country, says 2.5 hours a day is good enough for two sedentary occupations. Correct? The denial was based on those facts, yes. The denial was based on those facts. You agree that in this circuit that's not sufficient? Four hours is the test for Armani. Okay. So at the time that you turned her down, you told her you turned her down because of those reasons, did you not? Because of the medical records, the surveillance, and the report of IME. Well, no, you didn't say, when she asked for the reasons for termination, you didn't say we have a report from a doctor, you can only sit 2.5 hours a day, but we think he's wrong. You sent her a VE report that said 2.5 hours a day is enough. After the termination, and the administrative record was, she appealed after the termination. You changed your reasoning, did you not? When you terminated her, you told her, she said I want to see the record, and what you sent her was an expert report that said you can sit for 2.5 hours a day and that's good enough. And then you got down the road and got another, the second expert may be right, I'm not impugning him for the moment, but they never knew about it. They never got to then supplement the record with their doctor's letters. They were never told that it was your opinion she could sit for 8 hours a day. They were told it was your opinion she could sit for 2.5 hours a day. We told her that on the uphold letter on the appeal. Yeah, after. After she had no ability to put in the record opinions from her doctor. She didn't know before that that she had to rebut 8 hours a day, and she didn't need to rebut 2.5 hours a day, did she? I can't cross that bridge with you, your honor, and here's why. At the time of the uphold, which was in October of 2017, the basis for the uphold, including Dr. Belcourt's opinions in the 8 hours a day and all that, was spelled out for her. She was then given the opportunity to submit a voluntary appeal within 180 days, and I would invite the court's attention to excerpt of record page 17 on this point, which is the uphold letter, and all I'm going to say about that is that at the time that the second appeal was offered, Ms. Wagenstein had the opportunity to submit any medical information that she wished to. At the initial time? No, after the uphold. Okay. And who would that have gone to? The company. Life Insurance Company of North America. The same decision maker? Yes, but because on appeal, there's a different decision maker than the original claim, but it goes back to the same claim administrator. The same administrator who handled the appeal? Meaning Life Insurance Company of North America. Well, no, I know. It's all internal. I'm asking, would it go to the person, would it go to the decision maker who turned down the appeal, or would it go to a different decision maker inside the company? I don't know the answer to that, your honor. It would go to the same department. I know that. So, I want to go back to the procedural issue. Ninety days after you terminate her and there's still no decision on the appeal, she goes to court and files this lawsuit. Why doesn't that cut off the record at that point in time? It doesn't because the period was told when Mr. Fleischman, on behalf of Ms. Wagenstein, told us that he had received the record. It was the largest record he had ever seen, and he hasn't got a chance to review the whole thing yet, but what he did see was Dr. Shaheen's report, and guess what? Armani says four hours. How did he get around that? Once the participant files an appeal, then the company is bound by the Department of Labor regulations, which require a full and fair review. They must start over. They must look at every document in the file, whether it was relied on or not, for the basis of the original decision. They must run down every lead. They must conduct a full and fair review and come to a reasoned decision, and that's what they set about to do. That's why they contacted Dr. Belcourt to determine, based on the entire medical record, whether the claim was supported, and he concluded that it was. So the 45 days to render a decision doesn't apply once an appeal is filed? Is that what you're saying? No, that's not what I'm saying, Your Honor. What I'm saying is that there's 45 days. The administrator can get 45 more if they say they need it. And you had more than 90? We did, but the reason for that is this tolling issue. And it's tolled when the company is waiting for information that's necessary to complete a full and fair review of the appeal. I'm trying to figure out when this occurred. Didn't her counsel say rather early on, when they sent a letter saying, you goofed, see you money? In light of that, we don't intend to put in additional evidence. No, Your Honor. He says on 6-21-17, we received the administrative record, the largest one I've ever seen, see our money. Before I read the rest of the record, can you please answer this question for me? At that point, why should the record be tolled when he's basically said, I don't think I need to say anything more than see our money? Well, he doesn't know that because he hasn't read the record yet. Well, I don't care what he's done. The question is whether equitable tolling means he's led you to believe that the appeal shouldn't be processed yet. What he said is, gee, I've got the record. I haven't read the whole thing. But looking at this Sheehan report, you goofed, see our money. Tell me why I need to do more. And you never respond. You never say, gee, it's based on the entire record, not just on the Sheehan report. You never say, we're going to go get a second report. I mean, regulations and procedural issues aside, this just seems terribly unfair to me. I respond in two ways, Your Honor. First, we did respond to Mr. Fleischman's letter with the C.R. Money, which is a notice of tolling, which is a letter of July 6, 2017, where we explained that we would give him time to finish his review of the administrative record. Following Your Honor's point to his logical conclusion. He didn't say, hold up the appeal while I review the record. He said, I've got a big record here. It's got a lot of stuff in it. But, gee, I don't think I need to do anything. You screwed up, C.R. Money. And you don't respond by saying, no, no, our position is that other stuff in the record shows that Dr. Sheehan is wrong, or we want to do further review. You just, you don't process the appeal at all? No, we do process the appeal, but we're giving him time to make his comments known about the administrative record. Following Your Honor's point to the logical conclusion. Is it your understanding that once you did that, you could take forever? No, Your Honor. And what's the limit? Because that, you requested, what, three days later, the 45-day extension, right? Correct. So on the letter that we're talking about with Judge Hurwitz is the letter of July 6th, where we say that we will toll until August 3rd. The letter that you're talking about, Judge Boggs, is the letter of July 10th, where we say we need 45 more days. But in the meantime... When do those 45... You didn't decide it within that 45 days, right? That is correct. You did not, or you did? You did not. No, we didn't. We didn't decide it until October. So if I look at this whole record, I see you're saying to him, look, we're going to toll this. We're going to toll it. I'm not sure you can toll it, but put that aside. We're going to toll this. And then a little bit after that, you say, we're just going to extend this whole thing for 45 days. And now what you're saying is, well, that may be true, but the first 45 days don't count. That's your tolling argument, isn't it? Not exactly, Your Honor, but we get another 40... Before the second 45 days start, we get the tolling period. That's right. Before the second 45 days. Right. So your argument doesn't... Then after that, you ask for additional 45 days, but what you're really arguing to us is that we would have had more than 45 days. We would have had 45 plus the amount of time it took us to dispose of the appeal because we had determined there was equitable tolling for a period of time without notifying her that we had determined that. I don't think I quite agree with that analysis, Your Honor. Let me tell you why. I think the tolling argument is important when we talk about the scope of the court's review. In the discussion with Mr. Fleischman, the court addressed whether or not the court should agree to accept Dr. Horwitz's report because perhaps the administrative record had closed when the plaintiff filed the complaint, which is before when we say the tolling ended. But in any event, he filed the complaint two months before we submitted the appeal decision. There's no dispute about that. But the question is, what is the administrative record and what does it consist of and when? And Mr. Fleischman's argument is that it closes when the complaint is filed. Even if that's true, which I'll explain in a minute why it isn't, then the Dr. Belcourt's report is in the record at that time. And I think there's another case you referenced in Mr. Fleischman's argument on which Judge is that you don't want to set up a situation where the administrator adopts a wait and see attitude. Well, let's just see what happens, see if they sue us. And if they do, then we'll run out and get some more medical work. That was not the scenario here. All this was in place well before the complaint was filed. So why don't you at least give them the Belcourt report? Your argument is that the administrative process is still running along and it's timely. Why don't you give them the Belcourt report before you deny the appeal? Because Your Honor, the cases I've talked about, and remember this is before the regulations were amended, so it's under the old regulations. And under the old regulations, the court looked at that issue from around the country and they said it would end, it would result in an endless back and forth between the administrator and the participant and no decision would ever, could ever be made. See, I view the Belcourt report differently than the way you characterize it. You say it's just our review of the record, summarizing what's in the record. But that's not really true. Belcourt opines, Belcourt opines that she's not credible. Belcourt opines that she can, that she can sit for eight hours a day. So it's not, if we're just somebody looking at the whole record and saying, I'm looking at the whole record, the Sheehan report says this, but the other stuff says that, that would be one thing. But he, he reaches opinions. It's a, he's a doctor reaching opinions, isn't he? I agree, Your Honor. And, and the reason that's important to our case is because he's got to determine as a medical doctor, whether Dr. Sheehan's conclusions are supported by the medical evidence. He's really the only one who can do that. None of us in this room can do that. Well, I have still got the same problem. And I know you say she could have come back later, but at some point when you have a doctor who's now reached an opinion directly different than the previous doctor that you hired to reach an opinion on this issue, don't you have some obligation to go to the other side and say, we got a new report? If and only if the medical record that, the conclusion that Dr. Sheehan reaches is supported by the medical evidence. And even then, the cases have determined that there's no obligation to do that. I know the case, I know the case has determined that. I'm not arguing now what the regs say and don't say, which you know far better than I. It just strikes me as really unfair. You know, I would agree with Your Honor, but for one fact. And that one fact is that when we upheld on appeal and disclosed all the bases for Dr. Belcourt's report, she could have submitted all that evidence then and submitted a second voluntary appeal. That's where the fairness, I think, comes in to Your Honor's question. There was an issue that I'd just like to address briefly in the 30 seconds I have, and it has to do with what are we going to do with this case should the court start examining remedies, which for the reasons I described, I don't think is necessary. So the issue is whether or not we should send it back to the district court or to somebody to take a look at these three or four letters that came in in January of 2018. And the answer to that is no, that would be a futile effort. Why? Not only because they don't relate to the issues that are at issue medically, because they're a conclusory, but more importantly to the district court and to this panel. The district court has specifically said that it did not inform the analysis of whether or not she was disabled. Okay, but here's my problem. You said, assuming that there is a remedy. So now we're assuming that she wins. So, and you're saying there's no reason for anybody to look at the records, at these letters. I guess that means we just order an award of benefits to her. Oh, no, Your Honor. It means that you uphold the district court's opinion. No, see, you can't play it both ways. You said, now let's get to the issue of remedy. What if she wins? What's the remedy? And so my question to you is, what if we agree with her that this was not conducted properly? What is the remedy? Yours is there's no remedy. There's no remedy. I mean, that's the answer. There's no remedy at all. Even if you violated the regulations and didn't do what you were supposed to do, there's no remedy. There's a remedy if this panel determines that the district court committed clear error, but there's no evidence of that error. Okay, no, that's your primary argument. I understand it. I'm asking, you're the one who brought this up. You could have sat down without bringing it up, but you didn't. So, let's assume that we conclude the district court erred. I know you don't want us to go there. That was my question to your friend. Assuming the district court erred in doing what? Erred in its judgment. We vacate the district court's judgment, which dismisses her lawsuit, and we say, here's why you erred, district court, and we spell it out. I don't know what we're going to say, but just assume that she wins in some way. What do we do? Would you rather we remand to the plan or to the district court? Or we grant benefits. You don't want us to grant benefits. That's his number one. I assume that's not your number one. That's right. I believe, your honors, that there's no reason to do anything except affirm. Okay. What I'm saying is that if you remand to the district court with the instructions to consider these letters, the district court has already told us what they're going to find based on the order that we already have in the file, that it did not inform their decision under Montgomery's sentence. Does that mean you're answered to the question, though, if we vacated it, we should remand to the district court, not to the plan, because you're going to win at the district court. Is that your position? Well, I think that, no. I mean, you've got to answer one way or the other. Okay. Well, then, if I had to choose, you'd remand to the plan administrator. Okay. Good. That's an answer. Yeah, but you don't get to say, if there's a remedy, the remedy should be to affirm. Yeah. Because the remedy assumes that she wins. And I think the way that I dug myself a hole and started to climb in and then fell in at the bottom was, by my use of the term remedy, when I had originally intended to just say, no. All I intended to say was that the district court already looked at the letters and substituted them. We ought to afford a remedy to you. We should affirm. That's what you're saying. That sounds good to me, Your Honor. I've way extended my time. I appreciate your patience. And if I can answer any more questions, I'd be happy to do that. Mr. Fleischman, we'll give you a minute. Thank you. I'll try to be real brief. The reason that we did not exercise our right to a voluntary second appeal was because we weren't notified of the decision giving us that right to the second appeal until close to two months after the complaint was filed. And we were already in litigation. With regard to telling them I needed more time to look through the, I wrote to them on July 8, 2017. It's at ER 124. I wrote, based on your above representations regarding Cigna's reliance on the IME report of Dr. Shaheen, I will not be submitting any medical records. So they knew I wasn't going to do this thing about tolling waiting for my records. I told them I wasn't going to submit anything else. Is that letter, how long is that letter after the letter that your friend? How long is the letter? No, how period of time? Oh, it's July 8th. Right. And did you, had you previously corresponded by saying, gee, I got a bunch of stuff. Yes. But once I review the Shaheen report, I need to have an answer from you. Right. Well, I actually talked to her on the phone. Okay, no, but I'm trying to figure out the period of time between those two correspondences. Between, I'm sorry, what was the first one when I first wrote to her? Right. Okay. I can go back and look at the record, but I'm just trying to figure out in my own mind, even if we gave them equitable tolling for that period of time, would they have finished the stuff within the required 90 days? You said, I want the record, they sent you the record on June 14th. No, I asked for the record first on May 9th. Okay. And then I wrote them again on, well, I wrote them again saying, you know, where's the record? Yeah, we can go back and put these in sequence. All right. My next point was, the case law in this circuit, Saloma versus Honda, is that when you have to give me all the reports, if I ask for them, before you make an ultimate decision so that I have a right to review them and to make comment on them. And that's Saloma versus Honda, Ninth Circuit. I don't have the site. I believe I cited it in my brief. And then I cannot stop arguing without mentioning that Dr., the second doctor, I forgot his name already. Belcourt. Belcourt. Belcourt. The reason he figured out my client was lying was because if she can lie around the house all day, she can obviously do a sedentary job, which is nothing but nonsense. And that anybody would buy it shows nothing but bad faith on the part of FIGNA. I mean, if this was a bad faith case as opposed to an ERISA case, I'd have a jury awarding I don't know how much. Anyway. Thank you very much. Thanks. Thank you, Mr. Flaschman. The case of Wagenstein versus the FIGNA life insurance company is submitted and the court thanks counsel for their argument.
judges: Boggs, Bea, Hurwitz